May it please the Court, my name is Mary Pogalis. Before you start, can I just, and you are counsel for- Right, good morning. Jim Varabeh on behalf of Mr. Stroman. And have you all conferred as to how you might divide argument on the issues? Are you all going to cover all of the issues? It's up to you. We're not going to cut short your time. I just wanted to know. Well, we had discussed this earlier, not knowing you were going to have us come up here together. So we're both prepared to handle our own case individually. Yes. There will be some crossover, but I think we'll just proceed. I'll start. That's fine. You all will get your 15 minutes each. I just wanted the government to have basically one response to both of you since there's so much overlap. Yes. Okay. So, all right. You may proceed. Thank you, Your Honor. So may it please the Court, let me start again. My name is Mary Pugalis. I'm here representing the appellant Terence Varner. Terence T. Varner. He being the T of the whole factual record here. I want to do two things here. First, I want to make some comments on the standard of review because I think that's important on the harmless error issue. And then I want to go right in to the instructional error on proximate cause. I think if that instructional error is found by you, well, we all know what happened. That was conceded below. If you determine that it also was not harmless error, that it was prejudicial, then the whole house of cards falls apart. The murder conviction has to go out too, and everything goes back to the court. Many of the other issues simply become moot. You don't even have to address them. So starting with the standard of review, as I've indicated in my opening brief, the standard of review here on harmless error, of course, is Brett. However, you do not defer, you owe no deference to the state court here in this case for one reason, and this is controlled by INSAVONG, which allows you to review it without deference because the lower court did not apply the Brecht standard of review on harmless error. It did not follow the controlling federal law. The requirement was to look at the record as a whole. And over and over and over again, that did not happen. No one was more surprised than I was as I worked my way through this record, constantly saying, well, the court of appeal didn't even consider that. They didn't look at that. They didn't look at that. No, they didn't look at the whole record. What shows us that? Well, the main thing that shows you that is, from their opinion, when they state the overall picture, they describe what they say is the overall picture. This is at Excerpts of Record 49 in the Court of Appeal Opinion. They basically just give Lawrence Nero's version of events. That's all they say. They do give a very detailed rendition of what this person said, what that person said, but nowhere do they see or do they account for the fact that Lawrence Nero, in his most devastating testimony, was directly contradicted by multiple witnesses, and that being he said that Mr. Stroman and Mr. Nero were the only ones engaged in the street dispute, that they left and randomly came across my client a couple blocks away, told him they'd gotten into a beef with this guy, and my client walks away and comes back with two loaded firearms and gets in the car, and then they go back, and then they follow the victim away and gun him down. That's really, really devastating information, and that is all that the Court of Appeal looked at. On the other hand, as I go to at length, I don't want to spend a lot of time in my argument on the details because it's in my brief at length, there was every single other eyewitness said differently, said my client was in the mix, at the party, at the dispute, at the scene, that he was in the middle of the pushing, shoving, yelling, cussing match that was going on there. That he was in the car when they arrived, he was in the car when they left, which just makes a lie out of everything else that Mr. Nero said. But the Court of Appeal ignored all of that. How is that helpful, though? I guess I don't know why it matters. I mean, so there's this lead-up. Everyone agrees there's some kind of fight, whoever's there or not. Eventually, the car goes, and there's the shooting with two shooters. I mean, there's more testimony about that later. I'm not sure why it really matters, the details of the original fight. Well, the Court of Appeal thought it did. Well, how do we – I mean, maybe it's just the background facts, and they give one account in the background facts. I'm not quite sure how you – They called out the overall picture. Well, it may be called the overall picture, but in the legal analysis of what – I mean, I don't know why those – what part of their legal analysis turns on the exact description of the original tussle. Well, the important fact that Mr. Nero said, and the prosecutor hammered away at this in her closing, the important fact was if, in fact, they went and got him, he wasn't part of that scene, he had no reason to have had himself worked up or to get into that manslaughter state of mind, that he coldly and calculatedly walked away, got guns, and came back, it makes a huge difference in terms of the only defense that my client had to that murder charge was manslaughter. And the manslaughter becomes critical that he was in the mix, in the middle of it, that very little time passed, that one event flowed from another very quickly. But so your manslaughter argument, as I understand it, depends on the idea that he didn't have the right kind of intent. Yes. But the gun charge, the – let's see. The enhancement. The enhancement, thank you. The enhancement depended on a finding that he intentionally shot. Okay. So that's where I'm going, and that's what I want to really talk to you about today because I think that's pivotal to my client and critical to the case. There were two shots fired. There were two shooters. It appears from all of the testimony one shooter shot one bullet, the other shooter shot a second bullet. From the coroner we know that one of the – but we don't know. Well, not all the testimony is that right. Some testimony was there were even more shots. We know two shots got into the body, but we don't know how many shots there were. For purposes of the enhancement from the coroner's testimony, there were two shots that actually penetrated the body. Okay. So one of them was fatal. So let me – forgive me for interrupting, but so a lot of your brief was about the fact that we don't know which of the two shots was – we don't know which of the two defendants fired the shot that was the fatal shot. Right. But the enhancement language is if – and this mirrors the underlying section of the code. If you find the defendant guilty, you must determine whether the defendant intentionally and personally discharged a firearm and possibly caused great bodily injury or death to Clarence Ogden. So even if it was only the bullet that didn't cause the death, didn't it also cause great bodily injury? Well, that was not the theory at all, Harry. He died.  But that was the instruction to the jury. The instruction to the jury said they could find either great bodily injury or death. So they could find great bodily injury, and I don't see any objection to including that in the instruction. Well, if that was the instruction, then I think that was yet – and I don't recall. I assume it was. That alone is not right under the facts of this case because the facts of this case and the only supporting evidence that came from the coroner is that these two shots contributed to death. There was no testimony about great bodily injury. Well, isn't that an equivalent? I mean, how do you cause death without causing great bodily injury? I mean, there was testimony about the two bullets. How could a bullet go through a person without causing great bodily injury? You don't need any further evidence of that. Isn't it just self-evident? Well, I mean, I have to agree with you on that, but that was absolutely not the theory presented in this case. It was – I consider it pretty unfair. I don't even know how you could say that, though. The theory was there were two shots. One could have maybe killed him on its own, and the other one injured him at least. And that is the theory. How do you mean it's not the theory? The theory was 100% that these bullets were the cause of death, not that they were the cause of great bodily injury. They were the cause of death, and that was what the defendants were unnoticed about, and that is what they defended against. Well, I thought the theory was we don't know which one of them shot, but under California law it doesn't matter. They both shot, and he ended up dead. There were two bullets. And California law says in that situation you can convict. Well, I think I've said what I can about that. I don't think it would be – I don't think that that was a fair notice that the defendants were on at the time. It was clear this was being put in to prove death was caused by it. So – but I want to move on from there, if you'll allow me to. To go to the point, which is that on the murder conviction, the court found harmless error based on this proximate cause instruction, that it – based on this enhancement finding, that the defendant personally and intentionally discharged a firearm causing death, because it was a murder conviction that was being reviewed. So it was analyzed in terms of was there evidence. That's what the court of appeal looked at. Was this sufficient? So what I'm saying is in terms of the proximate causation, the failure to instruct on substantial factor and but for, that instruction does speak in terms of it causing death. That the jury must – they weren't told this. Had they been told this, they would have been told. They must find that each one of those shots was a substantial factor alone, and each one of those shots, but for that shot, the victim would be alive today. So that's where the court found harmless error. I'm saying that's wrong, because they weren't advised that they – with two shots, two shooters, one fatal, one not. And given the testimony of the coroner, which was that it was a superficial, the other wound, superficial, small, asked, now the other gunshot wound, that being the one to the shoulder, was more superficial. Is that right? Yes. Maybe in a generic, it was a flesh wound. All right. And that in and of itself probably would not have caused the death. That's correct. Now, because the jury wasn't told about but for and substantial factor, this is very critical evidence that could have led them to say, we can't say that that wound was a substantial factor, and but for that wound, the victim would be alive today. They just can't say that. So to rely on that to establish harmless error on the second-degree murder conviction was unreasonable. I see I'm kind of running short on – I think you have – I think you made a mistake. The portions that you were just talking about involving the grazing wound was a third shot. What Carter said was that shot one entered Ogden's left back, traveled downward, made a hole in the aorta, and exited near his left armpit. Shot two entered Ogden's right back, hit only tissue and muscle, and left no exit wound. A third wound was a grazing along the front of Ogden's left upper arm or shoulder. And I think it's the third wound that you were just quoting about. No, and I'll give you the references to the record that clarify that. At the reporter's transcript 168, wound – it's referred to throughout this testimony as wound number four. Wound number four entered the upper right shoulder area and traveled through muscle. So it's wound number four that is under discussion during this portion of the cross-examination. And this part, I'm now on page 170 of the reporter's transcript. The examination has gone between the bullet that nicked the aorta and the bullet that went through the muscle. So when they refer to the other wound, the first question up here is the big wound that went through the aorta. That in and of itself would have caused death, yes. And the other entrance wound, not grazing wound, entrance wound, was more superficial. Is that right? Yes, it was a flesh wound. All right, and that in and of itself probably would not have caused the death. That's correct. All right. Okay. Thank you. Yeah, I think I better – I'm running really short of time here, so it really goes fast when you're having a good time. I have a question. So when – why – so I'm looking at people v. Bland in the proximate cause instruction, and it says great bodily injury or death is the instruction, the 12022.53 instruction. I'm a little confused about where you were quoting when you said it had to be about death and not great bodily injury. Well, I'm saying that the concurrent cause instruction that I'm talking about, the substantial and the but-for, the whole argument from the prosecutor, the whole state of the evidence in this case, was that these two together caused death. But, I mean, your argument is they should have gotten an additional instruction on proximate cause, and I'm wondering – To differentiate. – how about the exact thing you quoted, and how do we know it wouldn't have – I mean, we're in some hypothetical world. How do we know it wouldn't have included great bodily injury? How do we – I mean, because the whole state of the case was death. So if I understand your argument – correct me if I'm wrong – your argument is that even though the instruction permitted the alternative of great bodily injury, neither side argued that possibility. So the jury, it's very unlikely that when they were considering it against the background of the argument of counsel, that they would have focused on that alternative even though it was theoretically presented to them. Do I have that right? Is that your argument? Well, I mean, I guess that's a fair representation. I would like to – maybe when I sit back down, I'll look at the charging document to see if the enhancement was charged as causing death. I assure you it was charged including both alternatives, but I just want to make sure that I understand your argument as to why we should not consider great bodily injury, assuming that I'm right that it was charged. I think only one harm was alleged here, and that was death. All right. And that it should all be viewed in that sense. Okay. Let's hear from counsel for Petitioner Stroman. Good morning again, Your Honors. May it please the Court. Jim Barabea on behalf of Mr. Stroman. I'd like to reserve two minutes for rebuttal, please. And I'd like to focus this morning on causation and also on the issue concerning the misstatement of the provocation standard during closing argument. On the first issue, I'll try to avoid the areas that have already been addressed by counsel. I do want to say in response to Judge Rakoff's question, I actually agree that it certainly summarizes my response to Judge Friendland's question. Even though the instruction – I did look it up – the instruction did say death or great bodily injury, the fact of the matter is the case was argued on it being death, not great bodily injury. And this is a general verdict. So the jury certainly wasn't asked to decide death or great bodily injury. So based on how the case was argued, it's certainly plausible, or I would say quite reasonable to assume that they decided the enhancement question based on the death alternative. So that's why I think proximal causation instructions are critical. Both proximal causation and the concurrent causation instructions were critical. But given that the actual instruction given had injury and death, and we're imagining a world in which they would have also given a proximate cause instruction, which in its typical form, it seems, according to Bland, includes injury and death, is there any reason for us to assume they wouldn't have included injury and death in the proximate cause instruction? Well, I think first of all, I think the instruction actually says injury or death. Okay, fine. Injury or death, but both are included in the instruction. I would submit that based on how this case was argued, that inclusion of those instructions wouldn't have altered that particular aspect of the case. I think it would have been the same, except that the jury would have been given guidance on how to decide what I think is a critical argument regarding at least this enhancement. Because I agree with counsel for Mr. Warner that this is a case where the coroner identified two possible concurrent causes that caused death. And although he said both forces contributed, he also said that one of them was so devastating that it could have by itself caused death. And I think sort of the takeaway from this is that the jury had room to find was a correct proximate cause and concurrent cause instructions. It had room to find that whoever fired the shot that was less devastating was only in substantial cause as the California law defies it. And for that reason, that element would not have been proven. So is it your argument that if the proper instructions had been given, neither defendant could be convicted? Well, I think either defendant would have an argument that whoever fired the second shot could not have had enhancement added. Now, how the jury decides that, you know. But there's no way to decide it, right? And hasn't California in Bland and other cases, the California courts have said over more than once that when you don't know who shot and there are two shooters, even if only one bullet goes in, you can convict both people. I don't think it quite says that, Your Honor. I think it's generally like you described. But this analysis only works assuming that both contributing causes meet the definition of substantial factor. And given how the expert described the second shot, I think there is room for the jury to say that the superficial shot that went through the muscles, didn't hit any major organs, by itself would have been survivable, likely. That's not a substantial factor. And it's only an insubstantial. The court also used the words theoretical. I don't think that quite fits here. But I think it could be reasonably found by the jury as being insubstantial. Can I just get a clarification? Sure. What Judge Friedland asked. So let's say that you're right on all of that. And I think from the medical evidence, it seems like you are. So one shot clearly nonfatal. The other shot clearly fatal. There's no way to figure out who fired which shot. But we know both of them definitely fired. Each of them fired a shot. Well, can I just jump? I'm sorry. Go ahead, Your Honor. Answering my question? My question is under California law, in that scenario, both defendants get acquitted? That's what you're saying is the law? Well, it depends on what the jury finds. To answer your question. I'm giving you a hypothetical set of facts. There's no dispute over the facts. Both defendants each fire a single shot. One is clearly fatal. The other is not. Right? Just like in this case. And there is no way the government concedes we have no way of identifying which defendant fired which shot. You say that in that scenario, both defendants get acquitted. I think it's a possibility. I thought California law was exactly to the contrary, that both defendants are guilty in that scenario. Only if each of them is a substantial factor. If each of them is a substantial factor. But there's no way to figure out which defendant fired which bullet. That's the whole premise of the hypothetical. I think that's the government's burden. If they've charged both defendants with this enhancement, they have to show that each of them is a substantial factor. Now, if they clear that threshold, then it doesn't matter who is minor, who is greater. I think that's the reading of the law. So, Bland is a California Supreme Court case. It's quoting a case called People v. Cole. And it says, we think it is obvious that an individual can and often does proximately cause injury without personally inflicting that injury. This is the California Supreme Court talking about California law. Can you cite some other California case that changed this? Well, I won't cite you a case that changed Bland on that aspect. I will cite you People v. Katelyn, 26 Cal Force at 155, that talks about sort of its most recent iteration of what a substantial factor test is in the criminal case. Maybe, if you could please maybe repeat your question again. Maybe I'm misreading it. I want to make sure I answer it correctly. I mean, this is a sentence from Bland. I think there are other examples, too. But one is, we think it is obvious that an individual can and often does proximately cause injury without personally inflicting that injury. Well, I would think that in the context of 12022.53 enhancement, because it's a personal firearm discharge, I don't think it allows a conviction unless the defendant actually discharged. And, again, maybe I'm not reading your question. There's no dispute about that here. I mean, there may be, but there are lots of witnesses. There is some dispute. Many witnesses testified that both people shot. There were some who said there were only one person. Okay, but the jury convicted both defendants, and there was enough testimony to support the notion that both defendants shot. Not necessarily under the correctness structure. At least our position is the jury did. But I don't want to, again, it sounds like you have a different question in mind. No, I don't think so. I just don't think I understand what you're relying on in California law to give a different answer. Well, I guess, again, my concern is maybe I'm not understanding your question. I want to make sure that I do. Is the court asking me whether or not you can be convicted of this enhancement without personally firing? No, without personally injuring. So you can fire. Two people fire. One bullet hits. If we don't know who fired the one that hit, if they both are firing at the victim, one hits, he dies, or is just injured. My understanding of California law is both people can be convicted. Now, you could say that doesn't make sense and California law should be different, but I don't see any case in California that says otherwise. Your Honor, I guess I'll have two responses. It's an issue that I'd be happy to brief further because I'm, to be honest with you, I'm improvising an answer as I'm answering this. But my understanding of this statute has always been that you cannot be convicted of this firearm enhancement on the theory you just described. So you shoot somewhere in the air, but because there is some causal relationship with that shot and the shot that actually kills or injures, then you're also on the hook of that. I don't think there is a, that sort of. I mean, have you read people v. Blaine? I have, Your Honor. What is your understanding of what it says? Well, my understanding of that case is that you have to personally discharge the firearm and your shot has to approximately cause death. And then they go on to explain that approximately cause death does not mean that your bullet has to have even hit the person. Well, I guess, Your Honor, on this set of facts, I'm a little uncertain as how, let's assume that you only cause a superficial wound, or even if you shoot in the air. Let's say the second shot kills them. How would you be approximate cause? I mean, we could ask the California Supreme Court that, but I don't understand how else you can read Bland. I just. Isn't part of your argument that because the jury was never instructed as to the meaning of approximately, that even though California law gives a very broad view of approximately, it's not a view totally without limits. And the failure to explain that to the jury could have led them to speculate wildly as to what approximate cause is. That's correct, Judge Rakoff. It is part of the argument that the jury wasn't told what approximate cause means. And as we cited in the briefing, the jury could have just easily thought that it meant something like approximate cause or something merely related. So the jury in this case didn't necessarily have understanding of approximate cause that was broader than the legal instruction would allow. For all we know, they had a much broader view than the instruction would allow. They didn't ask any question. They didn't ask the judge, please define approximate or anything like that, did they? No. As far as I know, there were no questions about the instruction. I thought that if they were giving it the kind of interpretation you've hypothesized, at least one member of the jury would have said, no, that can't be right. Let's ask the judge. Well, I think the facts here were, as Judge Friedland pointed out, there was some evidence of only one shooter, but most evidence pointed to both of them shooting. So they may have thought it was close enough. It sounds like both of them approximately caused it. And, again, I'm sort of imagining what the discussion in the jury room might have been, but I think that's just as plausible as any other scenario. They had a very broad view of it, and the facts, from a common-sense perspective, close enough. So why ask? I mean, there was enough questions in this case for them to ask for this. Well, can I just ask you, the state court emphasized that the coroner, notwithstanding the coroner's testimony that one bullet was clearly fatal, the other not, that both did, I think that word was contribute, to the victims dying. And, you know, the state court said, based on that, look, it wouldn't have mattered, even if you had gotten the substantial factor instruction, the outcome would have been the same. And I guess I'm not clear on why you think that's unreasonable. Two reasons. Number one, I think the state court unreasonably focused on net rights. The expert did say both contributed. But he also said that if you look at one, one by itself would have probably killed him, whereas a second probably wouldn't have. The jury isn't required to accept the expert's opinion in full. They can accept none of it. They can accept part of it. It's ultimately a fact question for the jury. And given how equivocal I think this expert testimony was on cause, he did say both, but he also said, well, this likely probably would have been the real cause. You know, this might have been contributed in a small way. I think there is enough room for them to. . . Can I ask, did your client put on conflicting medical evidence? No, there was no. . . This was undisputed. That's what I'm saying. The state court points to undisputed testimony from the coroner, and you're saying, well, the jury didn't have to believe it. Well, yeah, in theory they didn't, but we're. . . I mean, why would we reject the state court's. . . Well, because it's. . . For two reasons. One, it's a selective reading of the record because it omits what I think is a crucial portion. And number two, I think my client did dispute it. He did argue that he wasn't. . . He did address the issue in closing argument. Now, he didn't put on medical evidence, but I don't think that's equivalent of saying the issue is undisputed. Again, it's a factual issue for the jury. The expert's testimony is certainly helpful, but it's not like if an expert says X, the jury must accept X. He can reasonably argue for reasonable doubt based on numerous factual contradictions in this case and equivocation in expert testimony. I think that's a reasonable strategy, and I would encourage the Court not to accept that as undisputed evidence of condition. You said that you wanted to both cover a different issue and to save two minutes. Do you want to spend a minute on the other issue? If I could, please. Please, go ahead. Okay. My point on the voluntary manslaughter argument is this. The argument that the prosecutor gave is not only significantly overstated the provocation standard by sexually equating it with justifiable homicide. There was a case published prior to this argument, People v. Nahara, which was cited in the briefing, which said that it was almost identical to the argument he made. So, A, it was unreasonable for the prosecutor to use this argument, and it was unreasonable for the California Court of Appeal to say, well, that's not an inaccurate study of the law. But that other court is no more an authoritative source of what California law on this point is than the Court of Appeal in our very case, right? Well, it's the same district. I think – well, I take it back. I'm just saying – It may or may not have been. I'm sorry. Yeah, I hear – you're exactly right. That other case seems to me dead on point, and it says exactly the opposite of what our Court of Appeal said. But in terms of what California law is, we don't have to – why do we just necessarily assume that the other one is right? Well, the unreasonableness of the Court of Appeal's conclusion is because the court didn't acknowledge it. He didn't say, well, this is what this court said, but we think it's wrong. That would have been – you could say, well, that's a – you could argue whether that's an objectively reasonable interpretation of the law. But the court said nothing. The court actually said it's not a misstatement of the law. No citation. No explanation. No – in fact, I think to the extent that the equation of the example with voluntary manslaughter was actually justifiable homicide, I think the case that said that that's improper, I don't think it broke new ground. I think it clarified that under California law, that's improper argument because the provocation standard for voluntary manslaughter is different. So I don't even think that other case broke new ground. And, I mean, I know that Beltran is a Supreme Court case that was subsequent to the trial. But, again, I think it only reaffirmed what the law had always been. So for that reason, I think, at minimum, you're not bound by any kind of deference to that decision. And I know that I've run out of time. We'll give you a couple minutes for rebuttal. Thank you, Your Honor. Okay. Thank you for your argument. Let's hear from the government. And if you could put 30 minutes on the clock. I don't know that you'll need that full time, but you have it if you do need it. I appreciate that, Your Honor. Having briefed the case several times over the course of the last decade, I feel a lot of it's already in the briefs. Wow. And may it please the Court. There's really nothing manslaughter about this record. And especially viewed through the deference lens of AEDPA, there's nothing unreasonable about the findings made by the Court of Appeal in some great detail in the written findings. We also have the fact that the petition for review was denied by the California Supreme Court. And under sort of the new Harrington v. Richter standard, we are not required to just look back at what the California Court of Appeal did under Ailes v. Nunemaker. But... Well, we have a reason to stick... We absolutely do. But I just want to make the point... Go ahead. Look at what the state Court of Appeal said. And it's very much very supportable and very reasonable. Absolutely. And we have a reasoned opinion on every issue here, don't we? We absolutely do. We absolutely do. I wanted to counsel for Varner. Ms. Pugiella started with, you know, there was no finding on Brecht in the California Court of Appeal. Well, of course, that's a federal standard for habeas corpus error. The findings in the state law court were under the Watson test when it was not federal error. It was under Chapman when it was federal error. And or they found error sometimes, you know, under any test, which means Watson and Chapman. So there's no Brecht test in the state law courts. Your opponent's argument on that point was simply that the Court of Appeal didn't seem to take into account the entirety of the record. But, indeed, they did. And starting with the statement of facts, which covers even the conflicts in the evidence, they were clearly aware of the entire record. And it's a very important point that the expert who dealt with all of the wounds, to the left back, to the right back, there was, indeed, an additional wound which they thought may have been caused by the bullet that exited the body. It certainly wasn't caused by the wound where the bullet still remained in the body. That the shots to the left back and the right back were both contributing factors of death. And to answer the court's question, you know, sort of how do you cause death or injury without actually hitting the victim, when one takes a shot at the victim, it encourages the other to take a shot at the victim. There's some sort of a support when you're acting in concert. I think that's part of what Bland is getting to. But everywhere from there, where only one of them actually connects a bullet to the body, to our present case, where we have really quite a lot of evidence from dozens of witnesses, really, that each hit the body. That Stroman said to Varner, get him. That Stroman fired. That the body reacted to that first shot. And that Stroman then fired and the body reacted again. And that he was dead by the time he got around the corner. Well, there's a lot of conflicting testimony on that, though. So if it really required the jury to find that both defendants hit the victim, I think you'd have a bigger uphill battle than my argument that the statute and that the Bland instruction was basically what they got. Well, they weren't given the proximate cause instruction. That one piece, and I guess there was some discussion of that earlier, the one piece of the instruction that they were not given was the proximate cause instruction. It had also come out of this same pattern. Instruction would certainly have involved causing injury or death. And the concept of cause that the jury had before it without approximate cause instruction, the courts reasonably have found up to this point, that the jury thinking cause would think actually caused. And that a proximate cause instruction, which would have sort of incorporated the Rube Goldberg processes that can sometimes intervene between an action and a result, that that would have actually broadened their understanding of cause. And that on this sort of intuitive actual cause theory, what they found was most likely that each shot, each fired shot that was a contributing factor to the death. But that's why it's harmless to not have mentioned proximate cause in this situation. And we contrasted the Bland case with the Richards case. In the Richards case, you do have this, you know, these gaps filled in by Rube Goldberg. You know, a person assaulted, that person is so traumatized by the assault that they then go and kill somebody else. That's when you need proximate cause to rein in a jury. In this case, it would have set the jury free. Can you remind me, the evidence at trial, did it establish that the two bullets that struck the victim, that they were fired from separate weapons, or was that not able to be determined? That could not be determined. That could not be determined. Although, yes, different kinds of weapons were placed in the hands of the victims by Nira, who was in the car when the weapons were distributed. So just to forget maybe for a second about this enhancement, just as a matter of general California causation principles, let's say in murder cases, in the hypothetical that I posed or that Judge Friedland posed, let's just make it here where both defendants fire, and only one bullet strikes and kills the victim. It's impossible to determine which of the two defendants fired. Under California causation principles, do both defendants get acquitted, or are they both convicted? No, they can both be convicted, absolutely. If you fire with intent and we don't know which one was the better shot, basically, both are responsible, because they've acted in the same way. So, you're dealing with two different statutes here. The proximate cause arises only in the or the proximate nature arises only in the enhancement. That's what I'm asking. You've answered the sort of general murder hypothetical. What about this statute that now requires the jury to make a specific causation finding? Is the answer, then, to the hypothetical different? Both defendants are acquitted of the enhancement, because the jury simply can't figure out which one of them actually did cause the victim's death? No, because the jury if they did not make a finding, they might not I mean, if they did not make a finding that each contributed to the death, they would have acquitted on the enhancement. I guess that's the issue. I'm asking, is that required? I mean, there's no dispute in the facts. So, I'm just saying, as a matter of law, on that set of facts, both defendants have to be acquitted? We have So, we're saying that we have only one shot enters the body, and we don't know from whom. Right. But in terms of causation, we know that only one bullet caused the death. But they're just impossible to figure out. You agree, the defense agrees, it's impossible to figure out which defendant's gun the bullet came from, in that hypothetical? Right, we don't have forensic evidence saying which gun the bullet came from. There is testimony So, I don't understand why you're not quoting Bland in response to Chichewat for this. I'm not sure I read the perfect sentence from Bland earlier, because it's a quote of another case. But Bland, in maybe a better passage, says We believe that the instruction on proximate cause does correctly define proximate causation. 1202.53 requires that the defendant intentionally and personally discharge a firearm, but only that he proximately caused great bodily injury or death. The jury, properly instructed, reasonably found that the defendant did personally discharge a firearm. The statute states nothing else that the defendant must personally do. Proximately causing and personally inflicting harm are two different things. Correct. So, isn't that the answer to him, or is there something I'm missing? Yes, no, I think that answers the question. Are there other cases in California a lot like that, too? I mean, this idea that two people can do the thing and California lets you blame them both? Well, sure. So, we have a whole series of cases where one person is kicked once by each member of the gang standing around them, and you don't know which kick was the final fatal kick. But everybody contributed to the death, and everybody is equally guilty of the death. And what case are you referring to? I'm having trouble coming up with the name. There's actually a whole line of cases along that, and I'm sorry I can't think of the name. That strikes me as a very different set of facts anyway. And I hadn't cited it here for that reason. But Bland has been in the law in the state of California for quite some time, and what it sort of recognizes is that when two people are acting in concert, they both intend the result. It doesn't matter whose aim is better. And that's sort of a helpful way of viewing it. I mean, that's the way it's usually analyzed. What about the provocation, the discussion of the prosecutor's closing argument? So, the prosecutor was just sort of giving an example. He wasn't giving the definition of manslaughter. But their point is that the example itself was just wrong, and I'm inclined to agree with them. That just strikes me as, of course you could kill someone if necessary to stop the rape of a child that's happening in front of you. Isn't that justifiable homicide? Why would I be convicted of anything? Well, there'd be an argument on that case, Your Honor. And the argument on that case would be, you know, pull him off and call 911. Don't take the law into your own hands right there. If you're killing him because you're pissed, not because you're, you know, protecting the child. I'm 100 pounds less than the individual, and I have a weapon that I can neutral, I can stop the crime, but I'm going to have to inflict a fatal blow to do that. And that's the only, there's no other alternative where I can go in and, hey, do you mind stopping that unlawful conduct you're engaging in? It just strikes me as no jury would say that I'm guilty of manslaughter in that scenario. It doesn't mean that no prosecutor could charge it. I don't even, I mean, it's not even, there's no heat of passion. I've just come upon a horrible crime that I feel compelled to stop. And my actions are justified, it seems to me, in that scenario. It's not a question of the killing was unlawful, but we're going to mitigate it down to manslaughter. So if it's that obvious, then why was there no objection? And why was this issue not preserved for us? They objected a day later. I thought it was at the next break that day. The court, the oral argument basically ended, and they said, and we've got a problem with this. There's no objection. So maybe they made a mistake. But this is a terrible example of manslaughter. I mean, there's an error here, isn't there? It's not the way it would be charged. I mean, it probably wouldn't be charged by most prosecutors. Do you have any case that upholds a conviction of manslaughter on these kind of facts in any state? Each case is determined on its facts. Each case is charged on its facts. And we have suddenly imbued this very short example with a lot of specifics that weren't actually in the example. Do you have any case from any state that upheld a manslaughter conviction for killing someone who was in the process of raping a child? I do not have one at hand, Your Honor, no. So it's not a very good example of manslaughter then. There are lots of examples where people are convicted of manslaughter that you could describe instead. So the DA probably should have used the sort of the cliche one about finding your wife in bed with another man, right? But in this whatever, feminist era, I think he was trying to come up with some other example than the cliche. And it wasn't a great job. But nobody objected, people moved on, the argument ended, and the court determined that it would not reopen argument to debate a manslaughter example that was just given as a, you know, this is different from what we're dealing with here, that then got back to what we're dealing with here. The... In holding that that was untimely, can you point us to other California cases that have treated such a situation as untimely when you object in the next break? So that's almost not the point here because the California appellate and Supreme Court have reviewed this and not overturned it. And so California rulings on this topic are entitled to the deference of this court and... So you're saying we have to understand California law to treat that incident as manslaughter because of the way they handled it, is that what you're saying? Not necessarily, Your Honor. Even if it was a, you know, not a great example, the point was not to instruct on manslaughter, just to say that what we're dealing with here is murder, and to focus the jury back on murder after they had been led astray by the arguments of defense counsel. It was error correction in the moment, and maybe it was not a beautiful thing, but the courts of California who have reviewed this case have found it was just, it was an example. And it was a correction of an even worse description of manslaughter by the defense. But when you say we have to agree or listen or defer or something, are you saying that what we're deferring to is their description that that was manslaughter under California law, or are you saying we have to defer to their finding that it was not pedeference, but we don't have to just take it, and there's still a, we could still say it's unreasonable, right? I mean, I'm not sure what you're saying, what the ruling is that you're thinking we are bound by here. Primarily that a finding that any error was harmless is entitled to ad pedeference. Yeah. Was there, there's a standard instruction, but I didn't have a chance to go back and check whether it was given in this case when the court instructs the jury saying, if counsel has stated the law differently from anything I say, it's my instructions you must follow. Is that? That was absolutely given. It's given in every California case. And since there was no reason to give that instruction on manslaughter, there would be no reason why the jury would have focused on that part of the argument. That is reasonable, Your Honor. Yes. I had a different question. This came up in your adversary's argument. The California Court of Appeal said that, even if we assume in Varner's favor that the jury had doubt about which defendant fired which of two shots that killed Ogden, the undisputed testimony was that Ogden died of internal hemorrhage from multiple gunshot wounds and that even the less serious of the two passed through Ogden's body and did contribute to him dying. Is it correct that that was undisputed? I don't think you need to put on a medical expert in response to dispute it. And wasn't there, there was other evidence before the jury itself that I think was contrary to that, what the Court of Appeals there is saying is undisputed. Do I have that wrong? No, Your Honor. I think what the Court of Appeal is reflecting, and I would second this idea, is that it's not a contradiction of each wound contributed to the blood loss and contributed to death. To say that one of the wounds alone would not have caused the death if he had been treated immediately. If the contradiction between both wounds contributed, it was multiple gunshot wounds that killed him, it is basically uncontradicted on this record. That both wounds contributed to the death, even if one of them alone would have been survivable with immediate attention. Even if he was slowed by one and killed by the other, or was in the process of dying from one and was then shot again, both contributed to the blood loss and caused, not only caused, but also hastened his death. Okay. Doesn't look like we have any further questions. Okay. Then people are prepared to submit. Thank you very much. Thank you for your argument this morning. We'll give each of you two minutes. Entirely commenting on Bland here and the questions you had. I would refer you to the excerpts of Record 6566, the Court of Appeal ruling, which first the Court of Appeal found error under Bland for the failure to give those additional proximate cause instructions. And then it said the jury was never instructed on the meaning of proximate cause and had no reason to think appellant could have proximately caused the death. There's no reason to think on the evidence and presentation in this case that the jury understood that Section 12022.53 could require anything less than personal infliction of the harm. So doesn't that help you? That's the point. It does. No, I'm saying the Court of Appeal itself. Not giving the instruction helps you. That's what the Court is saying, is that it actually benefited the defendants that they didn't get this instruction. No, I think that was completely twisted thinking on the part of the Court of Appeal. When you look at what the actual instruction is, it depends essentially on an aiding and abetting theory, what you're talking about in Bland. This jury got a completely wrong aiding and abetting instruction that said the two were equally liable for the higher wrong. And our position has always been that all this error on proximate cause, given the additional instructional error on aiding and abetting, Mr. Varner was entitled to have the jury decide these questions. That's really the issue here. But the jury decided both intentionally shot, right? No. The jury found the enhancement. Yeah. So in order to find that, they found that both people intentionally shot. That's what the enhancement requires. Oh, I'm sorry. Yes, the intentional shooting, but not what caused the death. And as to that, the missing instruction would have told them substantial factor and but for. So he never had the chance to have the jury decide those based on these permutations of the coroner's testimony, and all of it was infected by that really bad, really wrong aiding and abetting instruction that they got. That's how you would get to what you're talking about in Bland, that everyone's responsible if they're part of it. So thank you. Thank you. We appreciate your argument. Two minutes for you as well, sir. Thank you, Your Honor. I have three brief points. First, on the voluntary manslaughter argument, not only was the example, I think it was justifiable homicide. I urge the Court to look at the entire argument, excerpts of records 674 to 678. Aside from that example, the prosecutor also said that it's not voluntary manslaughter because it's not a reasonable response to kill. Again, that's clearly incorrect under California law. And, again, there had been published a story saying that it's incorrect. And, in fact, subsequently the California Supreme Court said that it's incorrect. So the argument is clearly improper. I don't think there was any room to read it any way other than it's overstated the provocation standard and reduced the prosecution's burden of proof. Now, my second point would be Ms. Rivlin mentioned that there was nothing voluntary manslaughter about this case, and I respectfully disagree with that. What you had here was a situation where my client had an argument with his ex-girlfriend, with whom he dated for a year, that had broke up about two months prior to, they had a very tumultuous relationship and breakup. So they were in the middle of a violent, aggressive argument. Now, as the victim steps in, he doesn't just say, oh, guys, cut it out. He actually aggressively and violently interferes in it. He may also have been flirting with the ex-girlfriend. I think she said that he may have been saying that. And under California law, you have to look at provocation by looking at the same facts that the defendant was in. You're not looking at his specific subjective proclivities, but you have to take the facts as they were actually done. And given those facts, I think a jury could quite reasonably find that an ordinary person, a sober person in that situation, would have acted rashly, from passion, and without judgment and deliberation. That is all the California law requires for voluntary manslaughter. You know, under California law, absent justifiable homicide, killing is never a reasonable response. That's not the standard. And one sentence, if I could. The answer to your hypothetical about causation, I think as phrased, I would say that both of them have to be acquitted. If the prosecution hasn't proven that each of them were a substantial factor in causing the death or grave bodily injury, they have to be acquitted. And can you point us to any California case that says that? I would submit on the Kaitlin case that I cited to the Court. My very vague recollection of Bland this morning, and I would also urge the Court, if the Court has further interest in this issue, we'd be happy to brief it further, to address, so that I could give you a more specific answer. Was this Kaitlin case in your brief? I'm not sure I know what case you're talking about. I think Kaitlin might have been a case that I shepherded from the case that I cited on proximate cause. So yesterday, in preparation for the argument, I shepherded what the latest – I don't think we – I don't remember knowing about that case. So maybe you could submit that citation. I would, yes, Your Honor. Okay. Thank you very much for your argument all around. The case just argued will be submitted, and we are in recess for this point.
judges: Watford, Friedland, Rakoff